MURDOCK, Judge.
This is a child-custody-modification case. C.E.T., the father, appeals from a judgment of the Elmore Circuit Court awarding custody of one of the parties’ two children to K.M.T., the mother, and ordering the father to pay child support to the mother.
The parties were divorced pursuant to a divorce judgment entered by the trial court in March 1997. At the time the divorce judgment was entered, the parties had a minor son, T.M.T., and the mother was pregnant. Pursuant to the divorce judgment, the father was awarded primary physical custody of T.M.T. Thereafter, the mother filed a petition to modify custody of T.M.T. and to establish the father’s paternity as to the child she had been pregnant with at the time of the parties’ divorce. The father alleged that the mother had “been with another man” and that he was not the father of the second child.
In April 1999, pursuant to a settlement agreement reached by the parties, the trial court awarded the mother additional visitation with T.M.T., adjudicated the father to be the father of the parties’ second child, awarded the mother custody of the parties’ second child, and awarded the father visitation with the second child.
In August 2000, the mother filed another petition to modify custody of T.M.T. In her petition, the mother alleged that there had been a material change of circumstances since the April 1999 custody judgment. She requested that she be awarded custody of T.M.T. and that the trial court order the father to pay her child support in accordance with Rule 32, Ala. R. Jud. Admin. The father filed an answer denying the mother’s allegations and counterclaims requesting that the mother be held in contempt for allegedly interfering with the father’s visitation with the parties’ second child and that he be awarded damages, *467 attorney fees, and costs under the Alabama Litigation Accountability Act.
The trial court conducted a two-day trial, at which it received ore tenus and documentary evidence. T.M.T. was eight years old at the time of trial. The trial court entered a judgment awarding the mother custody of T.M.T. and ordering the father to pay child support to the mother. The trial court denied the father’s counterclaims and awarded him visitation with both of his children. The father filed a postjudgment motion requesting a new trial, in part because the trial court had conducted an in camera interview with T.M.T. despite the father’s objection to the interview. The father also requested, in the alternative, that the trial court alter, amend, or vacate its judgment based upon what, he says, was an erroneous calculation of his child-support obligation. At the hearing on the father’s postjudgment motion, the trial court received additional ore tenus evidence. After an unfavorable ruling on his postjudgment motion, the father appeals.
The father makes three arguments on appeal, two of which relate to the trial court’s modification of custody and one of which relates to child support. Because we have determined that the father is entitled to a new trial based upon the first of his custody-modification arguments, i.e., that the trial court erred by conducting an in camera interview with T.M.T., we pre-termit any discussion of his remaining arguments.
During the trial, the mother requested that the trial court conduct an in camera interview with T.M.T.[1] When the trial court stated that it intended to interview the child in camera, the father’s counsel stated, “[M]y client would like his attorney to be present and would like the opportunity to also ask questions.” The trial court denied the father’s request. Thereafter, the trial court interviewed T.M.T. in the presence of a court reporter. However, the court reporter did not record the interview. After the trial court conducted the in camera interview, the father renewed his objection, specifically stating that he “ha[d] a constitutional right to confront ... and cross-examine all witnesses.” The court responded, ‘Tour record is made.”
In Ex parte Berryhill, 410 So.2d 416 (Ala.1982), our Supreme Court stated:
“We are aware that the practice exists among certain trial courts to conduct private conversations with minors in chambers with the consent of opposing counsel. In the absence of waiver or consent, however, the private interview by the trial court cannot be condoned. To sanction such a procedure would fly squarely in the face of the constitutional right of litigants to a public trial. Nothing in American law allows ‘private’ trials.... The fundamental principal is that the decision of a court must be based on evidence produced in open court lest the guaranty of due process be infringed.
“Rule 43, [Ala. R. Civ. P.], provides that ‘[i]n all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided in these rules.’ There is no exception in the rules for in camera examination of witnesses without the presence or consent of attorneys and the right of cross-examination.
*468 “In Raper v. Berrier, 246 N.C. 198, 97 S.E.2d [782] (1957), a proceeding was instituted by a natural father for the purpose of having the court award him custody of his thirteen-year-old daughter. During the course of the trial, the judge conferred alone in his chambers with the minor in question. Custody was awarded to the respondents, and the father claimed the court committed error in conferring with the child privately. On review, the appellate court held that it was error to receive testimony from witnesses without affording the petitioner an opportunity to be present and know what evidence was offered. While the court recognized that in many instances it may be helpful to talk to the child whose welfare is so vitally affected by the decision, it stated that traditionally court hearings are open. This was cited as one of the sources of our courts’ greatest strength. Carefully noting that there was no suggestion that the able trial judge was improperly influenced by the private interview and no such suggestion is made here, it was ruled nevertheless that the petitioner’s right to hear all the evidence offered in his case must not be denied him.”
Ex parte Berryhill, 410 So.2d at 418; see also Bamburg v. Morse, 686 So.2d 327, 328 (Ala.Civ.App.1996) (reversing a trial court’s decision to modify custody where the father had objected to the trial court’s in camera examination of the minor child).[2] Our Supreme Court has also stated:
“Some jurisdictions hold that it is not necessarily improper for a trial court to conduct a private interview off the record, even in the absence of consent or waiver, when the court either states for the record a summary of the child’s testimony, or the court does not make that testimony the primary basis for the custody decision. See, e.g., Seniuta v. Seniuta, 31 Ill.App.3d 408, 334 N.E.2d 261 (1975); Jenkins v. Jenkins, 125 Cal.App.2d 109, 269 P.2d 908 (1954). However, the decisions from jurisdictions such as these are not persuasive in view of our decision in Berryhill that absent consent, waiver, or acquiescence, a private interview is not proper.”
Ex parte Wilson, 450 So.2d 104, 106 (Ala.1984).
As noted in Ex parte Berryhill, we make no suggestion that the trial court was improperly influenced by the in camera interview with T.M.T. However, without the father’s consent to the interview or a waiver by the father of his right to have his counsel present during the interview, the trial court committed prejudicial error by conducting the interview and violated the father’s right to due process. Based on the foregoing, the judgment of the trial court is due to be reversed. This cause is remanded for a new trial as to the mother’s petition for modification of custody.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ„ concur.
THOMPSON, J., concurs in the result.

. We note that one of the arguments that the mother made at trial to support her petition for a change of custody was that the father had “ignored” the possibility that T.M.T. had attention deficit disorder based upon a physician's observation in April 1999 that T.M.T. was "fidgety, interrupts, distractible, and nervous,” and the physician’s conclusion that T.M.T. might have attention deficit disorder.

. The mother argues in her brief to this court that "the record does not indicate that any ... private interview took place.” However, during the trial the mother’s counsel admitted that the interview had occurred and that she had requested that the trial court conduct the interview.