MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2014 ME 53
Docket:      Cum-13-200
Submitted
 On Briefs:  February 11, 2014
Decided:     April 3, 2014

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
             JABAR, JJ.

## ROBIN S. HUTCHINSON

v.

## JENNIE E. (HUTCHINSON) COBB

MEAD, J.

[¶1]   Robin S. Hutchinson appeals from an order of the District Court (Bridgton, *Moskowitz, J.*) granting Jennie E. (Hutchinson) Cobb's motion to modify an existing divorce judgment that had awarded primary residence of the parties' minor child to Cobb with specific rights of contact to Hutchinson. Hutchinson's appeal requires us to decide whether a trial court may, in a civil proceeding, and in the absence of an agreement of the parties, take testimony from a child witness in chambers and off the record.  We answer the question in the negative and vacate the order.

## I.  BACKGROUND

[¶2]  In 2008, the District Court (Farmington, *Stanfill, J.*) entered a divorce judgment on the ground of irreconcilable marital differences.  In the judgment, the

court awarded primary residence and sole parental rights and responsibilities of the parties' minor child to Cobb, allowing Hutchinson one supervised two-hour visitation period with the then eighteen-month-old child each week until the child reached the age of five. Since the initial divorce judgment was entered, Hutchinson and Cobb have filed multiple post-judgment motions focused on issues of custody and visitation.[1] As a result of one such motion, in July 2010, the court (*Kelly, J.*) expanded Hutchinson's rights of contact to include two daytime visits per week. In September 2011, the court (*Driscoll, J.*) again expanded Hutchinson's rights of contact, this time to include overnight visits. In March 2013, after this case was transferred to the Bridgton District Court, a hearing was held on Cobb's latest motion to modify. Both Hutchinson and Cobb appeared pro se.

[¶3] At the hearing, the court, after determining that the child, age 6, was sufficiently competent to testify, indicated—without specific objection[2]—that the child's testimony would be taken in chambers in the presence of the clerk but without either party present. The parties provided the court with written proposed

---

[1] A review of the docket record in this case shows that the parties have filed six motions for contempt, five motions to modify, two motions to change venue, and a motion to recuse three different judges.

[2] Hutchinson objected generally to his child being called as a witness, but he did not object to the in-chambers procedure itself. When the court asked Hutchinson to state the grounds for his objection, he stated: "Based on my [child] has been put through enough on frivolous things."

questions.[3]  Unbeknownst to the parties, however, the child's testimony was taken off the record.  The court recounted aspects of the behind-closed-doors testimony in its findings.

[¶4]  In its decision, the court stated that, in response to its questioning, the child indicated that when she is at Hutchinson's house she sleeps in his bed wearing only a diaper, and that he wears only underwear.  The child also stated that she dislikes staying at Hutchinson's home because he is "mean" to her.  According to the court's findings, when the court asked her what she meant by "mean," she "indicated" black-and-blue bruises, but did not elaborate on how the bruises were caused.

[¶5]  Based on this evidence, along with Cobb's testimony, the court concluded that it was not in the child's best interest to continue to have unsupervised contact with Hutchinson.  It modified the September 2011 order to require supervised visits and eliminated overnight visits.  On March 25, Hutchinson filed a motion to extend the appeal deadline, and on April 23, after receiving an extension, he filed a timely notice of appeal.

---

[3]  The court later reported that the parties' proposed questions were asked "in substance."

## II.  DISCUSSION

[¶6]  The trial court has broad discretion in controlling the presentation of evidence.  *See* M.R. Evid. 611(a).  A court's control over where a witness may be examined, however, is sharply limited by M.R. Civ. P. 43(a), which provides that "the testimony of witnesses *shall* be taken in open court, unless a statute, these rules or the Rules of Evidence provide otherwise."  (Emphasis added.)  This rule, Hutchinson argues, was violated when the court took his child's testimony in chambers instead of in the courtroom.[4]

[¶7]  The requirement that testimony be taken in "open court" has deep roots in our jurisprudence, reaching back to English common law.  *See generally Richmond Newspapers, Inc. v. Va.*, 448 U.S. 555, 569-70 (1980) (discussing a history of public proceedings in England); Judith Resnik, *Bringing Back Bentham: "Open Courts," "Terror Trials," and Public Sphere(s)*, 5 Law & Ethics Hum. Rts. 2 (2011) (exploring the origins of public proceedings).  The virtues of public and open proceedings are many: education of the public; transparency; and discouragement of perjury, misconduct of the participants, and decisions based on secret bias or partiality.  *Richmond Newspapers*, 448 U.S. at 569-70.  Indeed, many

---

[4]  We note that the term "open court" in this context is not necessarily limited to the four walls of a traditional courtroom or some other specific location.  Proceedings may take place in a variety of locations as special needs may require and still satisfy the open-court requirement as long as the locations are consistent with traditional notions of open-court proceedings: the proceeding must be accessible to the parties and the public, and the proceedings ordinarily must take place on the record as provided by applicable rules and law.

of the cornerstones of the Anglo-American judicial system are founded upon open and accessible public proceedings, and without open-court testimony, many important procedural processes, including cross-examination, are either limited or eliminated. *See Jusseaume v. Ducatt*, 2011 ME 43, ¶ 13, 15 A.3d 714 ("[T]he right to cross-examine adverse witnesses . . . is constitutionally required in almost every setting where important decisions turn on questions of fact." (quotation marks omitted)).

[¶8]  In this country, our first legislators recognized the importance of open-court proceedings and public trials, and they incorporated appropriate protections, first in the laws of the original colonies, later in state laws, and ultimately in state and the United States' constitutions.  Resnick at 6-7.

[¶9]  Although the protections of the Sixth Amendment do not apply to civil proceedings, most states, like Maine, require open-court testimony in civil matters by statute or rule of civil procedure, typically in the form of Rule 43.  *See, e.g.*, Ala. R. Civ. P. 43(a) ("In all trials the testimony of witnesses shall be taken orally in open court . . . ."); M.R. Civ. P. 43(a) ("[T]he testimony of witnesses shall be taken in open court . . . ."); Vt. R. Civ. P. 43(a) (In all trials the testimony of witnesses shall be taken orally in open court . . . .").  The Federal Rules of Civil Procedure impose a similar requirement.  *See* Fed. R. Civ. P. 43.

6

[¶10]  With this precedent and history in mind, we must address the issue of child testimony that, along with the testimony of other vulnerable witnesses, presents a unique challenge in the face of M.R. Civ. P. 43's clear requirement of "open court" testimony.

[¶11]  Many states, including Maine, have created statutory exceptions to Rule 43 that allow child witnesses to testify in chambers under certain circumstances.  *See, e.g.*, Cal. Fam. Code § 7892 (West, Westlaw through Ch. 4 of 2014 Reg. Sess.) (allowing a child's testimony to be taken in chambers if certain circumstances exist); Ky. Rev. Stat. Ann. § 403.290 (West, Westlaw through 2013 Sess.) (allowing the court to interview a child in chambers to ascertain his or her wishes).  In Maine, 22 M.R.S. § 4007(2) (2013) permits, as an exception to M.R. Civ. P. 43(a), child testimony to be taken in chambers with only the guardian ad litem and counsel present, provided that the statements are a matter of record.[5] Section 4007(2)'s application is limited to child protective proceedings, however, and no other exception to Rule 43 exists that would allow in-chambers testimony under the circumstances of this case.

---

[5]  Section 4007(2) provides:

> The court may interview a child witness in chambers, with only the guardian ad litem and counsel present, provided that the statements made are a matter of record.  The court may admit and consider oral or written evidence of out-of-court statements made by a child, and may rely on that evidence to the extent of its probative value.

[¶12]   Some states allow a child to be interviewed in chambers despite the absence of a statutory exception to the open-court mandate.  *See, e.g., Kohler v. Kromer*, 214 S.E.2d 551, 552 (Ga. 1975) (holding it was not error for the trial judge to talk to the children in chambers outside the presence of counsel and the parties); *In re Brian B.*, 689 N.W.2d 184, 189 (Neb. 2004) (same).   Others, however, refuse to condone the practice.   *See, e.g., Ex Parte Barryhill*, 410 So. 2d 416, 418 (Ala. 1982) ("Nothing in American law allows private trials. That custom went out with the abolishment of the Star Chamber, and the right to a public trial . . . remains the fundamental law of our land."); *Raper v. Berrier*, 97 S.E.2d. 782, 784 (N.C. 1957) (holding that it was error for the trial court to interview a child witness in chambers).   We agree with the latter approach.   By allowing the child in this case to be interviewed without either party present, the court departed from the clear mandate of M.R. Civ. P. 43(a).   We wholeheartedly recognize the trial court's commendable efforts to protect the child from facing her parents in open court and possibly having to "pick sides," but those efforts must be considered in the context of litigants' procedural rights and the requirements of M.R. Civ. P. 43.

[¶13]   Like many rights that are within the province of the litigant, however, the protections of Rule 43 can be waived.   *See C.E.T. v. K.M.T.*, 880 So. 2d 466, 468 (Ala. Civ. App. 2003) (holding that an in-chambers interview

8

could have been conducted with the father's consent); *Berrier*, 97 S.E.2d at 784 (same). In this case, both Hutchinson and Cobb agreed to have their child testify in chambers.[6] They prepared questions for the court to ask the child and were given the opportunity to review and object to the opposing party's questions. In light of his clear consent to the court's deviation from the mandatory directives of M.R. Civ. P. 43(a), we will not now allow Hutchinson to challenge a process to which he openly acquiesced. *See State v. Ford*, 2013 ME 96, ¶ 16, 82 A.3d 75 (re-emphasizing that obvious-error review does not provide an opportunity for review of a requested but failed trial strategy).[7]

[¶14] Nevertheless, Hutchinson's consent to the in-chambers interview did not relieve the court of its responsibility to keep a record of the resulting testimony. All testimonial proceedings in any family or civil matter must be recorded. Recording of Trial Court Proceedings, Me. Admin. Order JB-12-1 (effective Nov. 22, 2013) (enacted pursuant to M.R. Civ. P. 76H(c)).[8] Testimony taken in chambers is not excepted from this requirement. To the contrary, when a

[6] As noted in footnote 2, although Hutchinson objected generally to his child testifying at trial, he voiced no specific objection to the court's intention to take the testimony in chambers without the parties and counsel being present. Indeed, he proposed questions for the judge to ask in chambers.

[7] We note that even when the parties consent and thus waive their objections to Rule 43, the best practice is for the court to ensure that there are procedural protections in place similar to those required by 22 M.R.S. 4007(2): allowing attorneys for each party (if both parties are represented) to be present and question the witness, and taking the child's testimony on the record.

[8] Me. Admin. Order JB-12-1 became effective on February 1, 2012. It was amended for the third time on November 22, 2013.

proceeding is closed, the recording requirement becomes even more vital. *See Robison v. Lanford*, 841 So. 2d 1119, 1124-25 (Miss. 2003) ("A trial court's refusal to make a record of a private conversation between the court and the child left the father with no means of knowing the basis for any findings the court might make." (quotation marks omitted)).

Here, the lack of a record of the in-chambers testimony deprives Hutchinson of any ability to respond to the court's findings or to seek meaningful appellate review. Further, the record provides no indication that Hutchinson had prior notice that his child's testimony would be taken off the record, and we will not infer that he acquiesced in or otherwise consented to the same. Because the court relied heavily on the in-chambers testimony in its findings and its ultimate decision to modify Hutchinson's rights of contact, we cannot say that the error resulting from the absence of a record was harmless. *See Deutsche Nat'l. Bank Trust Co. v. Wilk*, 2013 ME 79, ¶ 21, 76 A.3d 363. Therefore, we vacate the court's order of March 6, 2013, and remand this matter to the trial court for further proceedings consistent with this opinion. We do not reach Hutchinson's other arguments.

The entry is:

> Judgment vacated. Remanded to the District Court for further proceedings consistent with this opinion.

**On the briefs:**

John Wm. Martin, Esq., The Law Offices of John Wm. Martin, Skowhegan, for appellant Robin S. Hutchinson

Jennie Cobb, pro se appellee

Bridgton District Court docket number FM-2012-185
FOR CLERK REFERENCE ONLY