MAINE SUPREME JUDICIAL COURT              Reporter of Decisions
Decision:      2021 ME 53
Docket:        Pen-21-65
Submitted
  On Briefs:    September 22, 2021
Decided:       November 2, 2021

Panel:        STANFILL, C.J., and MEAD, GORMAN, JABAR, HUMPHREY, and CONNORS, JJ.

EMILY A. EMERSON

v.

JAKE W. LAFFAN

STANFILL, C.J.

[¶1] Jake W. Laffan appeals from a judgment of the District Court (Bangor, *Campbell, J.*) allocating parental rights and responsibilities concerning the parties' child, who is now three years old. *See* 19-A M.R.S. § 1653(2)(D) (2021). The child has resided with his mother, Emily A. Emerson, since birth and has had limited contact with his father. The judgment awards the parties shared parental rights and responsibilities and allocates primary residence to Emerson. Laffan has rights of contact every other weekend, starting with four hours of supervised visits and gradually increasing to the full weekend. The trial court also ordered Laffan to pay child support pursuant to Maine's child support guidelines. *See* 19-A M.R.S. § 2006 (2021).

[¶2] Laffan asserts three grounds for appeal. First, he challenges the District Court's requirement that he bear the full burden of transportation for visits with the child until July 1, 2022. Second, he appeals the failure to deviate from the child support guidelines given his transportation costs. *See* 19-A M.R.S. § 2007(3)(P) (2021). Finally, he challenges the failure to allocate any child contact to him on the Thanksgiving and Christmas holidays each year. Because there is no competent evidence in the record to support the trial court's finding that it is unreasonable for Emerson to drive or otherwise share in the transportation of the child until July 1, 2022, we vacate the judgment in part and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

[¶3] The following facts are recited in the trial court judgment and supported by the evidence. The parties are from Taunton, Massachusetts, where they were in a relationship for approximately one year. Both have a history of using cocaine, with Laffan's use being more recent. Upon learning she was pregnant with the child, Emerson decided that she wanted to change her lifestyle and moved to the Bangor area, where she gave birth. When Laffan found out Emerson was in labor, he and his parents drove to the hospital to try to see the baby but were unable to do so. Laffan filed his complaint to

3

determine parental rights a few weeks after the baby was born. Throughout the pendency of the proceedings, Emerson limited Laffan's contact with the child to a few hours at a time in the Bangor area. Laffan remains in Taunton with his family.

[¶4] The trial court imposed a phased schedule of visits between Laffan and the child to occur every other week. The first phase included six short, supervised visits "in the greater Bangor area." Phase two consisted of four supervised, overnight visits in Maine. The third phase permitted overnight visits from Friday at 5:00 p.m. to Sunday at 3:00 p.m. and could be outside Maine, though under the supervision of at least one of Laffan's parents. If everything proceeded in accordance with that schedule, the third phase would have commenced around the first week of June 2021. After that, the supervision requirement could be eliminated if Laffan submitted negative results from two hair follicle tests taken two months apart.

[¶5] At the time of trial, Emerson was married and pregnant with twins. The twins were due July 3, 2021, and Emerson expected to be on bed rest toward the end of the pregnancy, making travel difficult for her. The trial court found as follows:

> By the time that Jake completes the six supervised visits, Emily will
> not be capable of traveling for extended distances. Given that she

is expecting twins, in addition to [her child with Jake], it is unreasonable to expect that Emily will be capable of driving extended distances for a year after the twins are born. Therefore, until July 1, 2022, Jake shall be solely responsible for the transportation of the minor child[] for contact.

The trial court ordered all exchanges of the child to be in the greater Bangor area until July 1, 2022, unless the parties agree otherwise. Laffan lives approximately four and one-half hours away from the Bangor area. He also works a full-time job, often six days a week.

[¶6] At the same time, the trial court found that Laffan had been diagnosed with a progressive genetic condition that affects some motor function and may affect his ability to drive. In light of his condition, the court prohibited Laffan from personally driving with the child until Laffan provided written medical documentation authorizing him to do so. The court also required Laffan to annually provide Emerson with updated documentation of his ability to safely drive. Thus, Laffan's parents may be required to accompany him on each trip to the Bangor area not only to supervise the visits but also to provide transportation.

## II. DISCUSSION

[¶7] On appeal, Laffan argues that the order "requiring him to provide all transportation borders on discriminatory, [and] is simply not reasonable." We agree.

[¶8] "In assessing a determination of parental rights and responsibilities, we review factual findings for clear error and the ultimate conclusion concerning the child's best interest and rights of contact for an abuse of discretion." *Young v. Young*, 2015 ME 89, ¶ 5, 120 A.3d 106 (alterations and quotation marks omitted). Clear error arises when there is "no competent evidence in the record to support" a factual finding. *Violette v. Violette*, 2015 ME 97, ¶ 15, 120 A.3d 667 (quotation marks omitted).

[¶9] In this case, there is record evidence to support the finding that Emerson would "not be capable of traveling for extended distances" until the expected birth of the twins on July 3, 2021. However, there is no evidence in the record from which to presume that "it is unreasonable to expect Emily will be capable of driving extended distances for a year after the twins are born." The allocation of sole responsibility for transportation to Laffan for a year after the twins' birth is particularly hard to justify based on the other supported findings of the court. The trial court expressed doubt as to Laffan's ability to

safely drive with the child. The court also found that Laffan "works long hours, often six days a week." In contrast, the court found that Emerson "does not expect to go back to work after the twins are born." In addition, Emerson resides with her husband, who could potentially provide some care for the twins or assist in driving. Finally, the trip from Taunton to Bangor is approximately four and one-half hours each way, making it impractical, if not impossible, for Laffan to visit the child overnight anywhere but in a hotel in the Bangor area if Laffan must provide all transportation without missing work.

[¶10] In short, it was clear error to find that Emerson could not be expected to drive for a year after giving birth, and it was an abuse of discretion to allocate sole responsibility for all transportation to Laffan from the birth of Emerson's twins until July 1, 2022, based on that unsupported finding.

[¶11] As to Laffan's other contentions, the trial court acted within its discretion in (1) declining to deviate from child support guidelines even given Laffan's transportation costs, *see* 19-A M.R.S. §§ 2007(3)(P), 2001-2012 (2021); *McMahon v. McMahon*, 2019 ME 11, ¶ 19 n.2, 200 A.3d 789; and (2) allocating to Emerson child contact on the Thanksgiving and Christmas holidays each year, *see* 19-A M.R.S. § 1653.

The entry is:

> Judgment vacated in part and remanded for further proceedings consistent with this opinion.

---

Anthony A. Trask, Esq., Rudman Winchell, Bangor, for appellant Jake W. Laffan

Charles W. Hodsdon II, Esq., Bangor, for appellee Emily A. Emerson

Bangor District Court docket number FM-2018-263
FOR CLERK REFERENCE ONLY